Brotherhood of Railroad Trainmen et al., Appellant, *v.* The Public Service Commission (No. 1).

*Railroads—Trains—Full crew law—Switching operation—Act of June 19, 1911, P. L. 1053, (Full Crew Law).*

The provisions of the Full Crew Law do not apply to the movement of thirty-five or more cars, coupled together, over tracks de-

voted solely to yard purposes, over which no through or local trains pass, and where the movement is made under the direction of a local yardmaster without cabooses, markers or train orders. Such a collection of cars must be regarded as merely a switching movement, and is not a train within the meaning of the act.

Argued November 20, 1919. Appeals, Nos. 16 and 17, March T., 1919, by complainant, from order of the Public Service Commission, Complaint Docket, Nos. 1736 and 1737, in the case of Brotherhood of Railroad Trainmen and George B. Rowand v. The Public Service Commission of the Commonwealth of Pennsylvania and Philadelphia & Reading Railway Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Complaint for violation of the Act of June 19, 1911, P. L. 1053.

The complaint alleged that on September 10, 1917, the Philadelphia & Reading Railway Company ran and operated a certain freight train consisting of a locomotive and more than 30 freight cars, to wit: 75 such freight cars from a point on its road designated as "Head of Grade" to a railroad yard known as Mahanoy Plane yard, a distance of about six-tenths of a mile through the Borough of Frackville, Schuylkill County, and past the passenger station at Frackville, in violation of the Act of June 19, 1911, P. L. 1053.

The complaint prayed that, upon final hearing, the commission make such order in the premises as might seem meet.

The answer of the Philadelphia & Reading Railway Company admitted the facts contained in the complaint, but denied that the train was run and operated in violation of the Full Crew Law, and contended that the movement was a yard movement and not a train operation.

The commission dismissed the complaint. Complainant appealed.

523, (1920).] Assignment of Error—Opinion of the Court.

*Error assigned* was the order of the commission.

*William N. Trinkle,* of *Bell, Trinkle & Deeter,* for appellants.—The Pennsylvania Full Crew Law prohibits the operation by a railroad company of any trains "over its road or any part of its road," except in accordance with the provisions of the act. The act applies, therefore, to both through trains and switching movements: Public Service Commission v. B. & O. R. R. Co., 260 Pa. 323; P. R. R. Co. v. Ewing et al., 241 Pa. 581; P. R. R. Co. v. Public Service Commission, 67 Pa. Superior Ct. 569; City of Pittsburgh v. Kalchthaler, 114 Pa. 547.

The act is a remedial statute and is entitled to a liberal construction to effectuate its purpose: Johnson v. Southern Pacific R. R. Co., 196 U. S. 1; State ex rel. Minn. v. St. Paul, etc., R. R. Co., 98 Minn. 380, 28 L. R. A. N. S. 298; Walcott v. Pond, 19 Conn. 597; U. S. v. Winn, 3 Sumn. 209; Federal Cases 16740; Com. v. Shaleen, 215 Pa. 595; State ex rel. Com. v. Reeder, 171 Pa. 505; Com. v. McComb, 39 Pa. Superior Ct. 411.

The test of the application of the statute was the essential nature of the conditions presented, and not the terms designated by the respondent: Chicago, B. & Q. R. R. Co. v. United States, 211 Fed. 12; United States v. Pere Marquette R. R. Co., 211 Fed. 220; United States v. Grand Trunk R. R. Co., 203 Fed. 775.

*John T. Brady,* for Phila. & Reading Ry. Co., intervening appellee.

OPINION BY TREXLER, J., February 28, 1920:

Sections one and two of the Act of January 19, 1911, P. L. 1053, known as the Full Crew Act, provide that it shall be unlawful for any railroad company to run or operate over its road or any part of its road, any freight train consisting of more than thirty freight or other cars exclusive of caboose and locomotive with a train crew consisting of less than six persons or any freight

train consisting of less than thirty freight or other cars exclusive of caboose and locomotive with the train crew consisting of less than five persons.

There were two complaints filed before the Public Service Commission. The first alleged that the Philadelphia & Reading Railway operated a certain freight train consisting of a locomotive and thirty-three freight cars and two box cars from Mahanoy Plane to Frackville in Schuylkill County, a distance of about a mile with a crew of three men. The other complaint avers a reverse movement between the same points of seventy-five cars with less than six men.

The testimony shows that cars loaded with coal coming directly from the mines, are hoisted by cable to the top of Mahanoy Plane whence they are sent by gravity usually in groups of three cars under the care of one man to Spring street, Frackville. At or near Spring street they are assembled into groups of thirty-five cars, called by the railroad authorities "drags" and are then taken by a yard locomotive to the head of the grade, a distance of about three thousand feet. There is no caboose attached to the cars and no train markers used. The entire movement is under the direction of a yardmaster. At the head of the grade another crew containing the number required by law, and using what is known as a mountain engine, takes the cars a distance of six or seven miles to the St. Clair yard where they are classified according to capacity and size of coal, and are billed and forwarded to their destination. The operations are conducted over four tracks. There is a fifth track paralleling these and upon this fifth track passenger and freight cars are run by the Pennsylvania and Reading railroads. There is a cross-over from this fifth track to the others, but this is only used occasionally and is not involved in the operations complained of.

The commission decided that the movement of the cars above described was not such a running or operation of a freight train as required the number of oper-

atives designated by the act.    Both sides have quoted liberally from decisions of the United States courts relating to the Safety Appliance Act, March 2, 1893, C. 196, 27 Statutes at Large 531, and its amendments.

The decisions of the federal courts are directly in point and the reasons given in the various cases and the distinctions drawn in the interpretation of the Federal Act may well guide us in the consideration of our own.

The Pennsylvania Full Crew Act expresses as its purpose in its title "to promote the safety of passengers and employees."    The title of the Federal Act is identical. Under the Pennsylvania Statute the unit to be manned is a train.    The unit to be equipped with air brakes in the Federal Act is a train.    The Pennsylvania Act relates to train movements, "on the road or any part of its road," and the Federal Statute applies to "all trains" used in interstate commerce.

In U. S. v. Erie Railroad, 237 U. S. 402, the Supreme Court recognized certain movements of trains as not being within the terms of the Federal Act.    We quote, "As the context shows, a train in sense intended consists of an engine and cars which have been assembled and coupled together for a run or trip along the road.    When a train is thus made up and is proceeding on its journey, it is within the operation of the airbrake provision. But it is otherwise with the various movements in railroad yards whereby cars are assembled and coupled into outgoing trains, and whereby incoming trains which have completed their run are broken up.    These are not train movements but mere switching operations, and so are not within the airbrake provision."

To hold that all the movements of cars in railroad yards require a compliance with the air brake act or of the full crew act would lead to situations that would be not only inconvenient but practically impossible, and the legislators are presumed not to intend that such results should follow.

Wherever a train is transferred from one yard to another over the main track of the company it loses its character as a purely yard operation and comes under the provision of the Air Brake Act: U. S. v. Galveston H. & H. R. Co., 255 Federal Reporter 755; Chesapeake & Ohio R. R. Co. v. U. S., 226 Federal Reporter, 683; U. S. v. Erie R. R., supra; U. S. v. Chicago, Burlington & Quincy R. R., 237 U. S. 410.

The controlling test in the application of the statute lies in the essential nature of the work done, rather than the names applied by those engaged in it: U. S. v. Erie Railroad Company, supra. The tracks upon which these operations were conducted were exclusively used for delivering these cars from Mahanoy Plane to the place where the engine met them and proceeded to take them up the mountain. The operation was the same as the pulling of a train of cars out of a switch. Although the proof is that the railroad officials called this a drag, that there were no markers on the cars, that they were identified by mine slips and that they did not run upon schedule, and were entirely under the control of a yardmaster, still none of these items alone would be sufficient to take the movement out of the operation of the act. They nevertheless throw light upon the essential nature of the movement. In the Erie & Burlington cases referred to, a train moving from one yard to another on the same railroad was held to come within the air brake law since they were not merely engaged in switching, or yard movements but in making such transfers they came in contact with the general traffic of the road and passed over the main line tracks. They were not moving cars about in a yard, or tracks set apart for switching, but were engaged in main line transportation. The appellant seeks to find a similarity between the present case and those, in that a main line track parallels for a short distance the tracks used for the movement in question, but we do not think that this fact gives the purely local operation involved the character of main line traffic.

The activities on the main line track did not come in contact with the yard service at all. Examination of the federal cases leads to this conclusion that the cases holding that certain movements were train movements within the meaning of the act of Congress based their conclusions upon the fact that the cars in question moved on tracks devoted to purposes other than strictly yard purposes. The Frackville yard in the case before us is set apart for yard purposes exclusively, and no general traffic ever passes over these tracks.

In U. S. v. Northern Pacific Railway, 255 Federal Reporter 655, the Circuit Court of Appeals held: "The undisputed testimony also establishes the fact that no part of any of these tracks is ever used by any of the trains running between stations, freight or passenger, but that they are used exclusively for switching purposes to supply the industries along these tracks with loaded cars or empties to be loaded for outgoing freight for delivery to the main line. From these facts, no other conclusion can be reached than that of the learned trial judge that these train movements were merely switching operations and therefore not within the air brake provisions of the act of Congress, as determined in the Erie and Chicago, Burlington & Quincy cases, supra."

We think the Public Service Commission was right in holding that the operations referred to in the two complaints did not come within the purview of the Full Crew Act.

The order of the Public Service Commission is sustained, appellant for costs.